UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

| | | |
|---|---|---|
| ATLANTIC RECORDING CORPORATION; | ) | Civil Action No. 08-CIV-3922-DC |
| CAPITOL RECORDS, LLC; ELEKTRA | ) | |
| ENTERTAINMENT GROUP INC.; | ) | **ECF CASE** |
| INTERSCOPE RECORDS; MOTOWN RECORD | ) | |
| COMPANY, L.P.; PRIORITY RECORDS LLC; | ) | |
| UMG RECORDINGS, INC.; | ) | |
| VIRGIN RECORDS AMERICA, INC.; and | ) | |
| WARNER BROS. RECORDS INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| PROJECT PLAYLIST, INC. | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————————

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
PROJECT PLAYLIST'S MOTION TO TRANSFER**

Gary A. Orseck (admitted *pro hac vice*)
Alison C. Barnes (admitted *pro hac vice*)
Eva A. Temkin
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510

October 3, 2008

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ......................................................................................................... 4

    A.    The Convenience Of The Parties And Witnesses Does Not Favor Moving The Case To The Northern District Of California ....................................5

        1.    Convenience of plaintiffs and their witnesses ..............................5

        2.    Plaintiffs' third-party witnesses .................................................7

        3.    Playlist's witnesses and third-party witnesses .............................7

    B.    This District Is A Locus (If Not The Only Locus) Of Operative Facts ................10

    C.    The Location Of Relevant Documents Does Not Favor Transfer ........................12

    D.    Playlist Has Not Identified A Single Third-Party Witness In The Northern District Of California Who Will Have To Be Compelled To Testify Through Service Of Process ....................................................................13

    E.    Playlist's Assertion That A Court In The Northern District Of California Would Be More Familiar With The Legal Issues Presented Here Is Baseless ................................................................................................14

    F.    The Relative Means Of The Parties Is Of Little Significance When The Parties Are Corporations..................................................................................16

    G.    Plaintiffs' Choice Of Forum Is Entitled To Substantial Deference When, As In This Case, The Venue Is Plaintiffs' Home And A Locus Of Operative Facts ..............................................................................................17

    H.    Trial Efficiency And The Interests Of Justice Are Favored By Keeping The Case In This District ....................................................................................18

CONCLUSION..................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Actmedia, Inc.* v. *Ferrante*, 623 F. Supp. 42 (S.D.N.Y. 1985) ..................................................... 17

*AEC One Stop Group, Inc.* v. *CD Listening Bar, Inc.*, 326 F. Supp. 2d 525 (S.D.N.Y. 2004) ........................................................................................................ 4, 11, 14, 16

*Am. Geophysical Union* v. *Texaco Inc.*, 802 F. Supp. 1 (S.D.N.Y. 1992), *aff'd*, 60 F.3d 913 (2d Cir. 1994) ................................................................................................... 18

*Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc.* v. *LaFarge North Am., Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007) ............................................................... 12

*Arista Records LLC et al.* v. *Lime Wire LLC et al.,* No. 06 Civ. 5936 (GEL) (S.D.N.Y. filed August 4, 2006) .............................................................................. 14

*Astor Holdings, Inc.* v. *Roski*, No. 01 Civ.1905(GEL), 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ..................................................................................................... 12

*Berman* v. *Informix Corp.*, 30 F. Supp. 2d 653 (S.D.N.Y. 1998) .......................................... 13, 16

*Brierwood Shoe Corp.* v. *Sears, Roebuck & Co.,* 479 F. Supp. 563 (S.D.N.Y. 1979) .................. 4

*Byrne* v. *BBC*, 132 F. Supp. 2d 229 (S.D.N.Y. 2001) ............................................................ 9, 10

*Canadian Kennel Club* v. *Continental Kennel Club*, No. 96 Civ. 6735 (LMM), 1997 WL 361991 (S.D.N.Y. June 30, 1997) ...................................................................... 8

*Capitol Records, Inc.* v. *Kuang Dyi Co. of RM*, No. 03 Civ. 0520 (LAP), 2004 WL 405961 (S.D.N.Y. March 4, 2004) ....................................................................... 10

*Capitol Records, Inc. et al.* v. *MP3Tunes, LLC et al.,* No. 07 Civ. 9931 (WHP) (S.D.N.Y filed Nov. 9, 2007) ...................................................................................... 15

*Cartier* v. *D&D Jewelry Imports*, 510 F. Supp. 2d 344 (S.D.N.Y. 2007) .............................. 11, 17

*Coker* v. *Bank of America*, 984 F. Supp. 757 (S.D.N.Y. 1997) ................................................. 12

*Colour & Design* v. *U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 8332 (MBM), 2005 WL 1337864 (S.D.N.Y. June 3, 2005) ............................................................................ 12

*Doe* v. *Friendfinder Network, Inc.*, 540 F. Supp. 2d 288 (D.N.H. 2008) .................................... 15

*Elektra Entertainment Group, Inc.* v. *Barker*, 551 F. Supp. 2d 234 (S.D.N.Y. 2008) ................ 14

## TABLE OF AUTHORITIES — Cont'd.

**Page(s)**

*Elektra Entertainment Group, Inc.* v. *Does 1-9,* No. 4-Civ-2289 (RWS), 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004) ........................................................................................ 6

*ESPN, Inc.* v. *Quiksilver, Inc.*, No. 08 Civ. 4222 (CM) (HBP), 2008 WL 4222029 (S.D.N.Y. Sept. 15, 2008) ...................................................................................................... 15

*Gen. State Auth. (of Pa.) for the Benefit of Crompton-Richmond Co., Inc.* v. *Aetna Cas. & Sur. Co.*, 314 F. Supp. 422 (S.D.N.Y. 1970) .................................................... 4

*General Instrument Corp.* v. *Mostek Corp.*, 417 F. Supp. 821 (D. Del. 1976) .............................. 8

*Gross* v. *BBC*, 386 F.3d 224 (2d Cir. 2004) .............................................................................. 1, 4

*Gucci America, Inc.* v. *Hall & Associates*, 135 F. Supp. 2d 409 (S.D.N.Y. 2001) ..................... 15

*Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501 (1947) ........................................................................... 17

*Hall* v. *South Orange*, 89 F. Supp. 2d 488 (S.D.N.Y. 2000) ........................................................ 8

*Herbert Ltd. Partnership* v. *Electronic Arts Inc.*, 325 F. Supp. 2d 282 (S.D.N.Y. 2004) .......................................................................................................................................... 10

*I.M.S. Inquiry Management Systems, Ltd.* v. *Berkshire Information Systems, Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) ......................................................................................... 14

*Intria Corp.* v. *Intira Corp.*, No. 00 Civ. 7198 (AGS), 2000 WL 1745043 (S.D.N.Y. Nov. 27, 2000) ................................................................................................................ 13, 17

*Iragorri* v. *United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) ........................................... 5

*Jaffe* v. *Boyles*, 616 F. Supp. 1371 (W.D.N.Y. 1985) .................................................................. 11

*Kelly* v. *MD Buyline, Inc.*, 2 F. Supp. 2d 420 (S.D.N.Y. 1998) ............................................... 1, 17

*Kiss My Face Corp.* v. *Bunting*, No. 02 Civ. 2645 (RCC), 2003 WL 22244587 (S.D.N.Y. Sept. 30, 2003) ................................................................................................... 13

*Koster* v. *(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947) ........................................... 17

*Kwatra* v. *MCI, Inc.*, No. 96 Civ. 2491 (DC), 1996 WL 694444 (S.D.N.Y. Dec. 4, 1996) .................................................................................................................................. 10

*Kwik Goal, Ltd.* v. *Youth Sports Publishing, Inc.*, No. 06 Civ. 395 (HB), 2006 WL 1517598 (S.D.N.Y. May 31, 2006) ..................................................................................... 11

## TABLE OF AUTHORITIES — Cont'd.

**Page(s)**

*Levitt* v. *State of Maryland Deposit Insurance Fund Corp.*, 643 F. Supp. 1485 (E.D.N.Y. 1986) .................................................................................................. 17

*Lipton* v. *The Nature Co.*, 781 F. Supp. 1032 (S.D.N.Y. 1992) .................................... 4

*Millennium, L.P.* v. *Hyland Software, Inc.*, No. 03 Civ. 3900 (DC), 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ................................................................ 11, 17

*Murawski* v. *Pataki*, 514 F. Supp. 2d 577 (S.D.N.Y. 2007) ........................................ 15

*NBA Properties, Inc.* v. *Salvino, Inc.*, No. 99 Civ. 11799 (AGS), 2000 WL 323257 (S.D.N.Y. March 27, 2000)..................................................................................... 11

*New Era Cap Co., Inc.* v. *Prinz Enters., LLC.*, No. 06CV391S, 2008 WL 565490 (W.D.N.Y. Feb. 28, 2008) ..................................................................................... 16

*Perfect 10, Inc.* v. *CCBill LLC*, 488 F.3d 1102 (9th Cir. 2007)................................ 2, 15

*Sony Electronics, Inc.* v. *Guardian Media Technologies, Ltd.*, 497 F.3d 1271 (Fed. Cir. 2007) ............................................................................................................. 17

*Sony Music Entertainment Inc.* v. *Does 1-40*, 326 F. Supp. 2d 556 (S.D.N.Y. 2004) ................... 6

*Sports Eye, Inc.* v. *Daily Racing Form, Inc.*, 565 F. Supp. 634 (D. Del. 1983) ............................ 8

*Stinnes Interoil, Inc.* v. *Apex Oil Co.*, 604 F. Supp. 978 (S.D.N.Y. 1985) .................................... 4

*Student Advantage, Inc.* v. *Int'l Student Exch. Cards, Inc.*, No. 00 Civ. 1971 (AGS), 2000 WL 1290585 (S.D.N.Y. Sep. 13, 2000).......................................................... 10

*Teachers Insurance & Annuity Association of America* v. *Butler*, 592 F. Supp. 1097 (S.D.N.Y. 1984) ...................................................................................................... 9

*Toy Biz, Inc.* v. *Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998)............................... 10

*Transatlantic Reinsurance Co.* v. *Continental Ins. Co.*, No. 03 Civ. 3227(CBM), 2003 WL 22743829 (S.D.N.Y. Nov. 20, 2003) ................................................................ 8

*Twentieth Century Fox Film Corp.* v. *Cablevision Systems Corp.*, 478 F. Supp. 2d 607 (S.D.N.Y. 2007), *rev'd, Cartoon Network LP, LLLP* v. *CSC Holdings, Inc.*, 536 F.3d 121 (2d. Cir. 2008)................................................................................. 14

*Universal City Studios, Inc.* v. *Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y. 2000) ...................... 14

## TABLE OF AUTHORITIES — Cont'd.

**Page(s)**

*Viacom Int'l, Inc. et al.* v. *YouTube, Inc. et al.*, No. 07 Civ. 2103 (LLS) (S.D.N.Y.
  filed March 13, 2007) ........................................................................................................ 14

**Statutes**

28 U.S.C. § 1404(a) ..................................................................................................................... 1

Plaintiffs Atlantic Recording Corporation, *et al.*, submit this memorandum of law in opposition to Defendant Project Playlist, Inc.'s ("Playlist") motion under 28 U.S.C. §1404(a) to transfer this action from the Southern District of New York to the Northern District of California.

## PRELIMINARY STATEMENT

Plaintiffs are nine of the most well-known record companies in the world.  They filed this action last April to put a stop to the massive, on-line copyright infringement being committed by defendant Playlist through its fast-growing website, www.playlist.com.  Six of the nine plaintiff record companies have their principal places of business in this District.  Not *one* of them has its principal place of business in the Northern District of California, where Playlist wants the case transferred.  There is no dispute that Playlist does business in this District, and that a significant portion of its reported 25 million users reside here.  As the Second Circuit has repeatedly held, a plaintiffs' choice of forum should "rarely be disturbed" (*Gross* v. *BBC*, 386 F.3d 224, 230 (2d Cir. 2004) (citation omitted)), particularly when, as in this case, "the plaintiff has selected his home state as the forum."  *Kelly* v. *MD Buyline, Inc.*, 2 F. Supp. 2d 420, 441 (S.D.N.Y. 1998).

Lacking any substantial basis for its motion under the governing legal standard, Playlist attempts to portray this as a contest between David and a bullying Goliath, and suggests that a transfer to Playlist's home District would at least help level the playing field.  Thus, Playlist says that it is a "small start-up" company that "operates at a loss," whereas the plaintiffs are "huge multi-national conglomerates."  Br. 3.  As defendant tells it, "if Playlist is forced to try this case in New York, it will be placed at serious risk of a catastrophic failure to its website."  Br. 12. Indeed, Playlist asserts, "eliminating Playlist . . .  is exactly what Plaintiffs were hoping for by filing in New York."  Br. 21-22.

Playlist also argues that plaintiffs filed in this District for other "illegitimate reasons." Br. 2.  Among these, Playlist claims that plaintiffs "are engaged in forum shopping in the hopes of skirting 9th Circuit precedent."  *Id.*  Finally, Playlist suggests that the *merits* of the case support its request for a transfer.  It claims that Playlist is no more than "an information location tool similar to Google® and Yahoo!®" (Br. 4), and that plaintiffs' infringement claims against it amount to a challenge to "the very existence of the World Wide Web" (Br. 7).

None of this is relevant, and all of it is wrong.  First, Playlist is not a pauper without the means to defend itself.  As reported by Playlist's CEO, the company has experienced "exponential growth" in its two-plus years in business (Declaration of Jeremy Riney ("Riney Decl.") ¶ 8) and now boasts 25 million regular users (July 28, 2008 Letter from T. Klausner to Hon. Denny Chin, at 1).  According to Mr. Riney, Playlist earned approximately $4 million in revenues in 2007 – the company's first full year in business.  Riney Decl. ¶ 7.  Playlist has found the means to retain an array of professionals, including (among others), Winston & Strawn (Declaration of Joshua A. Plaut ("Plaut Decl.") ¶ 23), and Wilson Sonsini Goodrich & Rosati.  Playlist does business with firms like Google, Facebook, and MySpace.  Br. 17.  Having achieved such a rapid and dramatic rise – *based upon a business model of offering plaintiffs' copyrighted sound recordings for free and without authorization* (see Cplt. ¶¶ 2-5, 27-50) – Playlist's complaints about the financial burdens of litigation in New York should not be credited.

Second, there is nothing to Playlist's charge that plaintiffs have engaged in forum shopping by suing here.  The authority that Playlist says plaintiffs seek to avoid is *Perfect 10, Inc.* v. *CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007).  The holding of that case – which is at odds with the holdings of *every* court outside the Ninth Circuit that has addressed the issue – is

that the Communications Decency Act bars plaintiffs' *state law* claims. But as this Court observed at the August 26, 2008 pre-motion conference on this issue, plaintiffs' state law claims are only a portion of this case. Even if there were some rule that precludes favoring one available venue over another because of differences in substantive law (there is not), Playlist's wish to rely on Ninth Circuit law would be no more legitimate than plaintiffs' wish to rely on Second Circuit law.

Finally, even if the merits of the case were relevant to a transfer motion (they are not), Playlist's insistence that plaintiffs' claims would shut down the Internet is nonsense. Plaintiffs do *not* challenge "the operation of any major Internet search engine" (Br. 7); plaintiffs' claim is that the *purpose and effect* of the Playlist website is to infringe plaintiffs' copyrighted sound recordings, and to induce and assist millions of Playlist users to do so as well. Playlist can *say* that it endeavors to copy, distribute and perform sound recordings only "with the authorization of copyright holders" (Riney Decl. ¶ 9), but even a cursory visit to the Playlist website reveals that the overwhelming majority of the sound recordings that appear on the Playlist index are copyrighted works, and are obtained from third-party sites that obviously host the works illegally.

In short, Playlist's extra-legal arguments in favor of transfer are utterly unpersuasive. And as we show below, *none* of the nine factors that courts consider in adjudicating a Section 1404(a) transfer motion supports Playlist's request, much less do they point "strongly in favor" of moving the case to the Northern District of California.

**ARGUMENT**

Though never mentioned in Playlist's brief, it is well established that "a plaintiff's choice of forum is presumptively entitled to substantial deference," and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gross*, 386 F.3d at 230 (internal citations omitted).   Accordingly, "[a]bsent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court, plaintiff's choice of forum will not be set aside." *Gen. State Auth. (of Pa.) for the Benefit of Crompton-Richmond Co., Inc.* v. *Aetna Cas. & Sur. Co.,* 314 F. Supp. 422, 423 (S.D.N.Y. 1970).   Playlist does not come close to carrying that "heavy burden" (*Lipton* v. *The Nature Co.,* 781 F. Supp. 1032, 1035-36 (S.D.N.Y. 1992)), because *none* of the relevant factors strongly favors transferring the case.[1]   The most Playlist can show is that in a zero-sum balancing of inconvenience, a trial in the Northern District of California would reduce travel times for certain Playlist witnesses, and correspondingly increase them for certain of plaintiffs' witnesses.   But a "§ 1404(a) motion should not be granted if all transfer would accomplish is to shift the inconveniences from one party to the other."   *Stinnes Interoil, Inc.* v. *Apex Oil Co.,* 604 F. Supp. 978, 984 (S.D.N.Y. 1985) (citing *Brierwood Shoe Corp.* v. *Sears, Roebuck & Co.,* 479 F. Supp. 563, 566 (S.D.N.Y. 1979)).   Playlist's motion therefore should be denied.

---

[1]   The relevant factors are: "(1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with the governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally."   *AEC One Stop Group, Inc.* v. *CD Listening Bar*, *Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004).

4

A.    **The Convenience Of The Parties And Witnesses Does Not Favor Moving The Case To The Northern District Of California**

Playlist first argues (Br. 10-14) that the convenience factor "weighs heavily" in favor of transfer but the facts do not support that.  We note, at the outset, that this case seems an unlikely candidate for trial, which renders Playlist's concerns in this regard largely irrelevant.  The facts relating to Playlist's operations probably will not be in dispute by the close of discovery.  The question whether Playlist's operations amount to infringement of plaintiffs' works then will present questions of law for summary judgment.  As for discovery, it is hard to see how the case proceeding in New York would cause the "catastrophic failure" of Playlist's website (Br. 12) because the depositions of Playlist's California witnesses will be done in California either way.

If there *is* a trial, it is likely to focus largely or entirely on the measure of damages, in which case this forum is even more appropriate, because a majority of the plaintiffs have their principal places of business (and accounting departments) here.  See *Iragorri* v. *United Technologies Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (in performing the "convenience" analysis, courts should "focus on the precise issues that are likely to be actually tried").  And even assuming that all the parties' claims and defenses will have to be presented at trial, the convenience of the parties and witnesses still does not weigh in favor of transfer.

*1. Convenience of plaintiffs and their witnesses.*  As plaintiffs' submissions show, six of the nine plaintiffs have their principal places of business in this District.  See Declaration of Gary A. Orseck ("Orseck Decl.") ¶¶ 2(a)-(f); Cplt., ¶¶ 12-20.[2]  Conversely, *none* of them has its principal place of business in the Northern District of California.  Orseck Decl. ¶ 3.

---

[2]  The Complaint alleges (¶¶ 12, 13, 14, 19) that plaintiffs Atlantic, Capitol, Elecktra and Virgin have their principal places of business in New York.  IN fact, plaintiffs Motown and Priority have the principal places of business in New York as well.  Orseck Decl. ¶¶ 2(d) and (e).

Faced with these inhospitable facts, Playlist tries to reframe the debate by pointing out that *some* of the plaintiffs "have their principal places of business in the *State of California*." Br. 13 (emphasis added). That is true, but Playlist cites no authority for the proposition that three plaintiffs having headquarters in the *Central* District of California – fully 400 miles away from the *Northern* District – weighs "strongly in favor" of transfer to the Northern District. So if the question is whether the plaintiffs' principal places of business favor this District or the Northern District of California, this District is the winner.[3]

The location of the plaintiffs' witnesses also favors denial of Playlist's motion. Playlist says that, to defend these infringement claims, it will require the testimony of plaintiffs' witnesses regarding (i) plaintiffs' ownership of the copyrighted works at issue; (ii) plaintiffs' licensing and other authorizations to distribute the works; (iii) plaintiffs' own streaming and distribution of the works; and (iv) the efforts plaintiffs have made under the DMCA, and through design of plaintiffs' own websites, to thwart infringement of their works. Br. 7-8. In fact, these issues should *not* require substantial testimony at trial, but to the extent they do, the plaintiffs' witnesses who will be called to testify will consist overwhelmingly of individuals who are in this District. See Orseck Decl. ¶¶ 4(a)-(j).

---

[3] Playlist's assertion (see Br. 14) that the Northern District of California must be convenient for plaintiffs because they have often sued there is, to say the least, misleading. Of the 41 cases Playlist cites, it appears that all or nearly all are suits brought by the record companies against individual John Doe or named defendants involving allegations that they used an online media distribution system to reproduce and distribute the record companies' copyrighted works in violation of the Copyright Act. Given the volume and nature of this type of litigation and the geographical dispersion of the defendants, the record companies have filed these cases in courts across the country, including some in this District. See, *e.g.*, *Elektra Entertainment Group, Inc.* v. *Does 1-9*, No. 4-Civ-2289 (RWS), 2004 WL 2095581 (S.D.N.Y. Sept. 8, 2004; *Sony Music Entertainment Inc.* v. *Does 1-40*, 326 F. Supp. 2d 556, 559-60 (S.D.N.Y. 2004).

   **2.  *Plaintiffs' third-party witnesses.*  Plaintiffs** also intend to call third-party

witnesses who are located in this District.  Among these are the following:

- Playlist states on its website that it "pays performance royalties to ASCAP, BMI and SESAC, the three performance rights organizations ("PSO") based in the United States." http://www.playlist.com/node/147435.  Playlist says that these "creators and publishers of the songs you hear through projectplaylist.com . . . are being paid a royalty for their work if they are members of ASCAP, BMI or SESAC."  To the extent this is true, it establishes that Playlist understands itself to be "performing" plaintiffs' works for purposes of the Copyright Act.  Plaintiffs therefore intend to call witnesses from ASCAP, BMI and SESAC, all of which are located in this District.  Orseck Decl. ¶¶ 6(a)-(c).

- Plaintiffs expect to call witnesses representing various third-party technology companies that assist Playlist with its storage and performance of infringing works, among them Clearspring Technologies, Inc. (also known as clearspring.com), which has an office in this District, and no office in the Northern District of California.  See Orseck Decl. ¶ 7.  Among the subjects of that testimony will be the methods by which Playlist distributes, promotes, monetizes and tracks Playlist's website and the use of its embeddable player on various social networking sites.

- Plaintiffs expect to call the Chairman of Playlist's Board of Directors, Jason Berman, who resides in the Southern District of New York.  See Br. 4; Riney Decl. ¶¶ 9, 26.  Among the subjects of Mr. Berman's testimony will be Playlist's assertion that it attempts to include in its vast index "only links to music files posted to the Internet with the authorization of copyright holders."  Br. 4.  Playlist claims that it "demonstrate[s] its commitment to respecting copyrights" by having appointed to its board "well-known members of the music industry" like Mr. Berman.  *Id.*

- Plaintiffs expect to call a representative from KR Capital Partners, Playlist's primary investor, which is based in this District.  Orseck Decl. ¶ 8.  Among the subject of KR Capital's testimony will be Playlist's business plan, which plaintiffs allege is based upon the infringement of copyrighted works.

The location of these third-party witnesses favors litigation of this matter in New York, not in the

Northern District of California.

   **3.  *Playlist's witnesses and third-party witnesses.*  Playlist** identifies "8 key

witnesses" who "live and work in California."  Br. 11.  But of the eight people named, the four

who work in the areas most critical to the subject matter of this lawsuit actually live and work in

Los Angeles or Beverly Hills, not the Bay Area.  The fact that both Districts happen to be in

California is not a factor in Playlist's favor.  See *Hall* v. *South Orange,* 89 F. Supp. 2d 488, 494 (S.D.N.Y. 2000) (Brooklyn, New York plaintiff's choice of S.D.N.Y. given little deference because home forum and adjacent forum are not the same); *Transatlantic Reinsurance Co.* v. *Continental Ins. Co.*, No. 03 Civ. 3227(CBM), 2003 WL 22743829, at *4 (S.D.N.Y. Nov. 20, 2003) ("The location of witnesses in a forum *near* to the forum where suit was filed carries less weight than the location of witnesses in the forum itself.") (emphasis in original).[4]

All of these witnesses would have to travel wherever the case is tried.  The fact that the flight from LAX to JFK is longer than the flight from LAX to San Francisco is not a significant factor in the analysis.  See *Canadian Kennel Club* v. *Continental Kennel Club,* No. 96 Civ. 6735 (LMM), 1997 WL 361991, at *3 & n.3 (S.D.N.Y. June 30, 1997) ("Either way, travel is required, and the difference in travel time, or rearranging one's travel plans because fewer flights exist does not significantly affect the balance.");  *Sports Eye, Inc.* v. *Daily Racing Form, Inc.,* 565 F. Supp. 634, 639 (D. Del. 1983) (inconvenience of travel from New York to Los Angeles is not significantly greater than New York to Wilmington, Delaware).  Cf. *General Instrument Corp.* v. *Mostek Corp.,* 417 F. Supp. 821, 823 (D. Del. 1976) ("[T]he actual inconvenience . . . of transferring this action consists of the additional expense and time involved in traveling [from Hicksville, New York] to Dallas instead of Wilmington. . . .   [T]he additional expense is

---

[4]  Mr. Prayaga (Los Angeles) is Playlist's Chief Technical Officer, who "has knowledge about the development, maintenance, structure, and content of the Playlist Website."  Riney Decl. ¶¶ 41, 48.  Cf. Br. 10 ("In cases alleging infringement, the key witnesses are typically the people responsible for the design and operation of the allegedly infringing product or website."). Mr. Harding (Los Angeles) is Playlist's V.P. of Technical Operations, and "has knowledge about the structure and maintenance of the servers that host the Playlist Website."  Riney Decl. ¶¶ 42, 48.  Mr. Salazar (who does not reside or work in the Northern District) is Playlist's Spider Team Leader, and "has knowledge about Playlist's ongoing efforts to identify freely available links to music on the Internet for inclusion as content on the Playlist Website."  *Id.* ¶¶ 46, 48.  Finally, Mr. Kory (Beverly Hills), who serves on the Playlist board with Mr. Berman, "has knowledge about the steps that Playlist has taken to accommodate the interests of copyright holders."  *Id.* ¶ 40.  See also Plaut Decl. ¶ 18.

minimal. The additional travel time of approximately two or two and one-half hours while admittedly posing some inconvenience . . . would not appear to be significantly more burdensome.").

Playlist's assertion that the Northern District of California is more convenient for its third-party witnesses is equally unpersuasive.  Of the eight proposed third-party witnesses Playlist identifies, it appears that only three might live in the Northern District.  See Plaut Decl. ¶¶ 17-23.[5]  Of those three, two of them – Michael Richter of Facebook, Inc. (*id*. ¶ 20), and an unidentified employee of MySpace, Inc. (who Playlist says may live anywhere from Mountain View to Beverly Hills, *id*. ¶ 21), – are described as having knowledge of facts that are not at issue in this case.  Playlist says that both of them will testify as to plaintiffs' "efforts to interfere with Playlist's business relations" with third parties (*id*. ¶¶ 20-21) but that is neither an element of, nor defense to, any cause of action at issue.

\* \* \* \*

The convenience of the witnesses and the parties would be best served by keeping the case in this District, where plaintiffs chose to bring suit.  Even if the Court concludes that transfer to the Northern District of California would be more convenient for Playlist, the motion still should be denied because that forum would be less convenient for plaintiffs.  When "the factors involved in the Court's decision whether or not to transfer are in equipoise, the plaintiff is entitled to his choice of forum." *Teachers Insurance & Annuity Association of America* v. *Butler*, 592 F. Supp. 1097, 1106 (S.D.N.Y. 1984) (footnote omitted).  See also *Byrne* v. *BBC*, 132 F.

---

[5]  One of the eight, Robert Kory, is listed by Playlist as both a party witness (see Riney Decl. ¶ 40) and as a non-party witness (see Plaut Decl. ¶ 18).  Plaintiffs assert, "[u]pon information and belief," that another of the eight (Mr. Zangrillo) resides in the Northern District. *Id.* ¶ 19.

Supp. 2d 229, 238 (S.D.N.Y. 2001) (refusing to transfer venue when key witnesses and documents were in both plaintiff's chosen venue and defendant's proposed venue).

> **B.**     **This District Is A Locus (If Not The Only Locus) Of Operative Facts**

Playlist argues that the "locus" factor favors transfer because "[i]n an infringement action, the locus of the operative facts is where the allegedly infringing product was designed, developed and managed."  Br. 15.  But while the place where the product was made may be *a* locus, venue analysis may determine that there are *several loci* of operative facts.  *Kwatra* v. *MCI, Inc.*, No. 96 Civ. 2491 (DC), 1996 WL 694444, at *3 (S.D.N.Y. Dec. 4, 1996) (finding multiple loci of operative facts).  New York is a locus of operative facts.

First and foremost, the Playlist service is available in New York, and it has many users here.  Cplt. ¶ 9.  "Courts in this District have repeatedly held that in an action for trademark infringement and unfair competition, the *initial forum* is the locus of the operative facts if the allegedly infringing products are sold in that forum, even though the defendant manufactures the allegedly infringing product in the transferee forum."  *Herbert Ltd. Partnership* v. *Electronic Arts Inc.*, 325 F. Supp. 2d 282, 289 (S.D.N.Y. 2004) (emphasis added) (citation omitted).  See also *Capitol Records, Inc.* v. *Kuang Dyi Co. of RM*, No. 03 Civ. 0520 (LAP), 2004 WL 405961, at *4 (S.D.N.Y. Mar. 4, 2004) (same presumption applies in actions for copyright infringement); *Toy Biz, Inc.* v. *Centuri Corp.,* 990 F. Supp. 328, 331 (S.D.N.Y. 1998) (locus of operative facts was in New York notwithstanding that the allegedly infringing products were manufactured in Colorado); cf. *Student Advantage, Inc.* v. *Int'l Student Exch. Cards, Inc.*, No. 00 Civ. 1971 (AGS), 2000 WL 1290585, at *7 (S.D.N.Y. Sep. 13, 2000) (locus of operative facts in an unfair

competition dispute were in the S.D.N.Y. because defendant sold business cards there over the internet, even though defendant's business was in Arizona).[6]

Second, Playlist relies upon third-party infringers located in New York to provide content (see Cplt. ¶ 30), which is directly relevant to plaintiffs' claims of secondary infringement. See *Jaffe* v. *Boyles,* 616 F. Supp. 1371, 1377 (W.D.N.Y. 1985) (the question of which facts are "operative" turns on the substance of the claims asserted).

Third, Playlist has raised capital from a New York investment company (see Orseck Decl. ¶ 8); it generates revenue by selling advertising to New York companies through ValueClick media, a New York-based advertising sales company (see Cplt. ¶ 9); and Playlist's CEO has negotiated with plaintiffs regarding this dispute in meetings held in New York (Riney Decl. ¶ 11). See *NBA Properties, Inc.* v. *Salvino, Inc.,* No. 99 Civ. 11799 (AGS), 2000 WL 323257, at *4 (S.D.N.Y. March 27, 2000) ("[E]ven where there have been no sales of the infringing product in the initial forum, the locus of operative events is the initial forum if the defendant has had other business dealings in the initial forum related to the litigation and

---

[6] The cases cited by Playlist (Br. 15) are not to the contrary. The locus in those cases was where the infringing products were manufactured, but only because the forum chosen by the plaintiff had no substantial connection to the dispute except for the fact that the infringing item was sold there. See *Kwik Goal, Ltd.* v. *Youth Sports Publishing, Inc.*, No. 06 Civ. 395 (HB), 2006 WL 1517598, at *3 (S.D.N.Y. May 31, 2006) (New York was not a locus of operative fact because "[n]o party, witness, or employee [of either party] is located in New York"); *AEC One Stop Group*, 326 F. Supp. 2d at 527, 530 ("[plaintiff's] New York office and employees are unrelated to [the alleged infringing product], no witness for [plaintiff] lives or works in New York, and that [plaintiff] has at least two offices and numerous employees in California," while "most of [defendant's] commercial contacts are in California and most of the alleged infringing acts occurred outside New York"); *Cartier* v. *D&D Jewelry Imports*, 510 F. Supp. 2d 344, 346 (S.D.N.Y. 2007) ("The only connection of this case to New York is the ordering of allegedly infringing items in New York and their shipment to New York."); *Millennium, L.P.* v. *Hyland Software, Inc.*, No. 03 Civ. 3900 (DC), 2003 WL 22928644, at *5 (S.D.N.Y. Dec. 10, 2003) (same).

plaintiff conducts business in the initial forum.").  The "locus" factor does not militate in favor of transfer.

### C.  The Location Of Relevant Documents Does Not Favor Transfer

Playlist next argues that transfer of the case is supported by its claim that "[v]irtually all of Playlist's documents and records . . . are located in California."  Br. 16-17.  To whatever extent that is true, it is of little significance.  To begin with, "[t]he location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."  *Am. Steamship Owners Mut. Protection and Indem. Ass'n, Inc.* v. *LaFarge North Am., Inc.,* 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007).  See also *Coker v. Bank of America,* 984 F. Supp. 757, 766 (S.D.N.Y. 1997) ("In today's era of photocopying, fax machines and Federal Express, [defendant's] documents easily could be sent to New York.").

The document-location factor is *especially* unimportant in this case:  Even if it were any harder to Fed Ex documents across the country than to Fed Ex them across town (it is not), the vast majority of materials Playlist will produce likely exist in electronic form.  Production of these materials will be done by copying them to portable hard drives or DVDs and sending them out by overnight mail.  See *Astor Holdings, Inc.* v. *Roski,* No. 01 Civ.1905(GEL), 2002 WL 72936, at *12 (S.D.N.Y. Jan. 17, 2002) ("[T]he location of records is not a compelling consideration when records are easily portable.") (citation omitted).

Regardless what form the production takes, the reality is that Playlist will make its production to plaintiffs' counsel in Washington, D.C.  Moving the case to the Northern District of California would not have the slightest impact on that process.[7]

---

[7]  Because Playlist will produce its documents the same way regardless of where the case is filed, it has not even attempted to demonstrate that the production would be more burdensome if the case remains in this District. See *Colour & Design* v. *U.S. Vinyl Mfg. Corp.*, No. 04 Civ. 8332 (MBM), 2005 WL 1337864, at *4 (S.D.N.Y. June 3, 2005) ("[D]efendants' assertion that

**D.** **Playlist Has Not Identified A Single Third-Party Witness In The Northern District Of California Who Will Have To Be Compelled To Testify Through Service Of Process**

To whatever extent this case is likely to go to trial, the "availability of process to compel the attendance of unwilling witnesses" is relevant to the venue inquiry. *Berman v. Informix Corp.,* 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998). But Playlist does not identify a single non-party witness who it expects will be unwilling to testify in New York. Instead, it identifies a list of prospective witnesses (Br. 17-18), most of whom could be considered third parties only in the most technical sense. These include Robert Zangrillo (a paid advisor to Playlist); Andrew Bridges (outside counsel to Playlist); Robert Kory (who sits on the company's Board of Directors); and various of its business partners. It may be true, as Playlist hypothesizes, that "[p]resumably all of these witnesses would be *more willing* to testify in their home state than New York" (Br. 17) (emphasis added), but that is not the question. Playlist provides no evidence that *any* important third-party witness will have to be forced, through a trial subpoena, to testify at trial. Accordingly, even if this case were expected to go to trial, this factor does not support Playlist's transfer request.

---

relevant documents and sources of proof warrant transfer is accorded little weight without a detailed showing of the burden defendants would incur absent transfer . . . . Accordingly, given defendants' failure to specify the nature and volume of the documents they plan to use in support of their case, or the difficulty in transporting such documents, this factor weighs against transfer."); *Intria Corp.* v. *Intira Corp.,* No. 00 Civ. 7198 (AGS), 2000 WL 1745043, at *4 (S.D.N.Y. Nov. 27, 2000) (defendant's blanket assertion that all documents relating to the litigation were in defendant's home forum was not enough to favor transfer); *Kiss My Face Corp.* v. *Bunting,* No. 02 Civ. 2645 (RCC), 2003 WL 22244587, at *3 (S.D.N.Y. Sept. 30, 2003) ("[G]iven Defendant's failure to provide the Court with the nature and volume of the documents she plans to use in support of her case, or the difficulty in transporting such documents, this factor weighs against transfer.").

**E.      Playlist's Assertion That A Court In The Northern District Of California Would Be More Familiar With The Legal Issues Presented Here Is Baseless**

"Familiarity with the governing law is generally given little weight in federal courts.  In this instance, where the issue of federal copyright law is a subject on which both courts are familiar, this factor is neutral." *AEC One Stop Group*, 326 F. Supp. 2d at 531 (internal citation omitted).  After acknowledging this proposition, Playlist goes on to make two arguments (Br. 18-20) as to why the Northern District of California is better suited to adjudicate this case.  Both arguments are wrong.

First, Playlist contends that the Northern District of California "regularly handles actions implicating the protections afforded to online service providers by the DMCA," whereas "there do not even appear to have been substantive district court opinions on the relevant portions of the DMCA in the Southern District of New York."  Br. 18-19.  Playlist's suggestion (Br. 19) that courts in the Northern District of California "have greater familiarity with the substantive law" at issue here is unfounded.  See, *e.g.*, *Twentieth Century Fox Film Corp.* v. *Cablevision Systems Corp.*, 478 F. Supp. 2d 607, 620 (S.D.N.Y. 2007), *rev'd*, *Cartoon Network LP, LLLP* v. *CSC Holdings, Inc.*, 536 F.3d 121 (2d. Cir. 2008) (applicability of the performance right under the Copyright Act to streaming media); *Arista Records LLC et al.* v. *Lime Wire LLC et al.,* No. 06 Civ. 5936 (GEL) (S.D.N.Y. filed August 4, 2006) (pending); *Viacom Int'l, Inc. et al.* v. *YouTube, Inc. et al.*, No. 07 Civ. 2103 (LLS) (S.D.N.Y. filed March 13, 2007) (pending); *Elektra Entertainment Group, Inc.* v. *Barker*, 551 F. Supp. 2d 234 (S.D.N.Y. 2008) (an offer to distribute is sufficient to violate a copyright owner's distribution right); *I.M.S. Inquiry Management Systems, Ltd.* v. *Berkshire Information Systems, Inc.*, 307 F. Supp. 2d 521 (S.D.N.Y. 2004) (applicability of DMCA to technology designed to circumvent measures that control access to copyrighted works); *Universal City Studios, Inc.* v. *Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y.

2000) (same).  See also *Capitol Records, Inc. et al.* v. *MP3Tunes, LLC et al.*, No. 07 Civ. 9931 (WHP) (S.D.N.Y. filed Nov. 9, 2007) (Sept. 29, 2008 Memorandum and Order denying motion to transfer venue to C.D. Cal. in copyright infringement action against sites that host music files).

Second, Playlist presents a convoluted argument that the presence of plaintiffs' state law claims – brought under *New York* law – *also* supports transfer.  Playlist charges that plaintiffs chose this forum for the sole purpose of avoiding the Ninth Circuit's novel holding that the Communications Decency Act precludes common law infringement claims.  See Br. 19 (addressing *Perfect 10, Inc.* v. *CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2006)).  That charge is false, and should be ignored because Playlist provides no evidence to support it.  See *ESPN, Inc.* v. *Quiksilver, Inc.*, No. 08 Civ. 4222 (CM) (HBP), 2008 WL 4222029, at *6 (S.D.N.Y. Sept. 15, 2008) ("[D]efendant warns that the governing law factor should be afforded little weight because otherwise a plaintiff could assert state law claims for no other reason than to ensure that the case cannot be transferred to a different district.  However, in this instance there is no evidence of such nefarious intentions on the plaintiff's part.") (citations omitted).[8]

Taking this a step further, Playlist asserts that, if plaintiffs' common law claims are not dismissed at the pleading stage, transfer is warranted because the claims may turn out to be governed by California law and therefore should be heard by a California court.  And even if choice-of-law principles dictate that New York law applies (Playlist argues), a court in the

---

[8]  To the extent that there is forum shopping at work, it is entirely on the part of Playlist, which is well aware that no court outside the Ninth Circuit has ever agreed with the reasoning of *CCBill* (see, *e.g.*, *Doe* v. *Friendfinder Network, Inc.*, 540 F. Supp. 2d 288, 299 (D.N.H. 2008) ("[T]his court does not find the Ninth Circuit's resolution of the statutory interpretation question to be persuasive")), and that *CCBill* runs directly counter to authority in this District (see, *e.g.*, *Murawski* v. *Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Section 230(c) thus immunizes internet service providers from defamation and other, *non-intellectual property*, state law claims arising from third-party content.") (emphasis added); *Gucci America, Inc.* v. *Hall & Associates*, 135 F. Supp. 2d 409, 413 (S.D.N.Y. 2001) (rejecting claim that the CDA immunized a defendant from claims of contributory infringement under New York law)).

Northern District would be more than capable of hearing the New York claims because federal courts do such work all the time.  Br. 19-20.  But that is just another way of saying that *either* federal court would be capable of adjudicating state law claims governed by foreign law.  That is true enough, but it is no basis for upsetting plaintiffs' choice of forum.  However Playlist wants to spin it, this factor does not favor transfer either.

### F.    The Relative Means Of The Parties Is Of Little Significance When The Parties Are Corporations

Playlist next claims – through its counsel at Wilson Sonsini – that the operative dynamic of this case is an attack by "massive multi-national concerns with billions of dollars" against a tiny "start-up" with "infinitesimal" resources.  Br. 21.  As noted above, however, (at 2) Playlist has been quite a success in its short life, and its popularity is not surprising given that its entire business is to provide for the world plaintiffs' copyrighted sound recordings for free.

In any event, while the parties' relative means is fair consideration in certain situations, this is not one of them.  As this Court has held, "[w]hen both parties are corporations . . . this factor is given little weight."  *AEC One Stop Group*, 326 F. Supp. 2d at 531.  See also *id*. (relative means not a factor even though plaintiff was ten times larger than defendant); *Berman*, 30 F. Supp. 2d at 659 ("Where disparity exists between the parties, *such as an individual plaintiff suing a large corporation*, the relative means of the parties may be considered.") (emphasis added).  Considering this factor narrowly makes sense because, under defendant's view, large corporations, like plaintiffs, would virtually never have their choice of forum honored.  Such a rule would turn the basic presumption of forum analysis – that a plaintiff's choice of forum is due substantial deference – entirely on its head.[9]

---

[9] Defendant's citation (Br. 20-21) to *New Era Cap Co., Inc.* v. *Prinz Enters., LLC.*, No. 06CV391S, 2008 WL 565490, at *2 (W.D.N.Y. Feb. 28, 2008), is misleading.  That case dealt not with a well-funded "start-up company" like Playlist, but with a single individual who

**G.** **Plaintiffs' Choice Of Forum Is Entitled To Substantial Deference When, As In This Case, The Venue Is Plaintiffs' Home And A Locus Of Operative Facts**

As the Supreme Court has repeatedly made clear, "unless the balance [of conveniences] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947).  This deference is at its apex when (as in this case) (i) the plaintiff is a resident of the forum district, or has its headquarters there (*Koster* v. *(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *Kelly*, 2 F. Supp. 2d at 441); and (ii) there is a material connection or significant contact between the forum state and the events allegedly underlying the claim, as is also the case here (*Levitt* v. *State of Maryland Deposit Insurance Fund* Corp., 643 F. Supp. 1485, 1493 (E.D.N.Y. 1986)).

With these facts weighing strongly against transfer, Playlist again resorts to claims that plaintiffs are forum shopping (Br. 22-24), or attempting to bully Playlist into an unfavorable settlement (Br. 21-22).  Playlist, however, provides no actual facts to support either theory and, accordingly, these contentions should be ignored.  See, *e.g.*, *Sony Electronics, Inc.* v. *Guardian Media Technologies, Ltd.*, 497 F.3d 1271, 1289 (Fed. Cir. 2007) ("[T]here is no affirmative evidence to suggest that appellants filed this suit in order to obtain a more favorable bargaining position in any ongoing license negotiations. In addition, while this litigation may have had the effect of weakening [Defendant's] bargaining position relative to third parties, we do not think it

---

"operate[d] his business in addition to working full-time" for another company.  *Actmedia, Inc.* v. *Ferrante*, 623 F. Supp. 42 (S.D.N.Y. 1985) is equally unpersuasive.  Not only did the plaintiff there have no connection whatsoever to the original venue, it had not even *chosen* that venue because the case arrived in federal court only because it was removed there by the defendant.  In the other cases Playlist cites, the case was transferred because the plaintiff had no meaningful connection to the chosen forum, and the relative means of the parties was accorded only minimal weight.  *Intria Corp.*, 2000 WL 1745043, at *6, *8 (only "limited weight" should be accorded to this factor); *Cartier*, 510 F. Supp. 2d at 346 (same); *Millennium*, 2003 WL 22928644, at *5 (same).

appropriate to infer that appellants, therefore, filed this suit as an intimidation tactic to gain leverage in any future negotiations with [Defendant].").

### H.   Trial Efficiency And The Interests Of Justice Are Favored By Keeping The Case In This District

Finally, Playlist contends that trial efficiency and the interests of justice militate in favor of transfer, because the "median interval" for resolution of civil cases is 9.8 months in this District, but only 6.7 months in the Northern District of California.  Br. 24.  Those statistics have little relevance to *this* case, however, particularly in light of plaintiffs' efforts to move the case along, and Playlist's efforts to slow it down.

This case was filed on April 28, 2008, and it was not until exactly three months later that Playlist first advised the Court that it wanted to move the case to California.  At the same time, Playlist argued that plaintiffs should not be permitted to proceed with their claims based upon the illustrative list of works attached to the Complaint, and should first be required to identify "*the universe of* copyrighted works at issue in this litigation."  July 28, 2008 letter at 3 (emphasis added).  Playlist promptly served plaintiffs with an interrogatory, calling for all infringed works of which plaintiffs were aware at the time the Complaint was filed, and plaintiffs are in the process of providing that response.  And now that plaintiffs have acceded to that request, Playlist complains that the volume of works at issue will "impose a massive discovery burden on both sides" (Br. 8 n.1) and that discovery will take "eighteen months or more" (*id*. at 8).

What Playlist does *not* tell the Court is that plaintiffs have proposed to streamline the case by (i) bifurcating issues relating to ownership of the works and damages until after a liability determination; and (ii) "testing" the underlying liability questions using a small subset of the copyrighted works, and then turning to large-scale proof of ownership and damages at a later stage if necessary.  See, *e.g.*, *Am. Geophysical Union* v. *Texaco Inc.*, 802 F. Supp. 1, 5 & n.1

(S.D.N.Y. 1992), *aff'd*, 60 F.3d 913 (2d Cir. 1994) (approving test case procedure "[f]or convenience and to avoid untoward discovery expenses with respect to largely duplicative matters").  So far, Playlist has refused both of these eminently sensible proposals – precisely because judicial economy is *not* what Playlist is after.  Instead, Playlist is interested in putting off the end for as long as possible.  The interest of justice militates in favor of proceeding to the merits here, where the case was filed.

### CONCLUSION

For the foregoing reasons, Playlist's motion to transfer should be denied.

Respectfully submitted,

/s/ Gary A. Orseck_____
Gary A. Orseck (admitted *pro hac vice*)
Alison C. Barnes (admitted *pro hac vice*
Eva A. Temkin
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
1801 K Street, N.W., Suite 411
Washington, DC 20006
Tel: (202) 775-4500
Fax: (202) 775-4510
gorseck@robbinsrussell.com

*Counsel for Plaintiffs*

Dated:  October 3, 2008