UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -x

ATLANTIC RECORDING CORPORATION
et al.,

              Plaintiffs,  :

      - against -     :

PROJECT PLAYLIST, INC.,

              Defendant.  :

- - - - - - - - - - - - - - - - -x

**OPINION**

08 Civ. 3922 (DC)

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #: _____        │
│ DATE FILED: 3-25-09         │
└─────────────────────────────┘
```

APPEARANCES:        ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
      By:  Gary A. Orseck, Esq.
           Alison C. Barnes, Esq.
           Eva A. Temkin, Esq.
1801 K Street, N.W., Suite 411
Washington, D.C.  20006
Attorneys for Plaintiffs

WILSON SONSINI GOODRICH & ROSATI, P.C.
      By:  Tonia Ouellette Klausner, Esq.
           Joshua A. Plaut, Esq.
1301 Avenue of the Americas, 40th Floor
New York, New York  10019
Attorneys for Defendant

**CHIN, District Judge**

        Defendant Project Playlist, Inc. ("Playlist") operates
a website, www.projectplaylist.com (the "Website"), that provides
an index of links to songs available on third-party websites.
Users can create playlists of songs on the Website -- hence the
name -- that they can save on the Website or upload to their
profiles on social networking sites.  Users can also download the
songs from the third-party websites.

        In this case, six of the world's largest record
companies sue Playlist for copyright infringement and unfair

competition.  Plaintiffs own copyrights to the majority of sound recordings in the United States, and claim that most of the songs on the third-party websites to which Playlist provides links are posted without plaintiffs' permission, and therefore infringe plaintiffs' copyrights.  Through this action, plaintiffs seek to hold Playlist responsible for copyright infringement.

Playlist moves, pursuant to 28 U.S.C. § 1404(a), for a transfer of venue to the Northern District of California, where Playlist's business is located.  In the event that motion is denied, Playlist moves to dismiss plaintiffs' state law claims. For the reasons set forth below, both motions are denied.

## BACKGROUND

## A.  Allegations of the Complaint

Plaintiffs are some of the largest record companies in the world.  (Compl. ¶ 11).[1]  Atlantic Recording Corporation and Elektra Entertainment Group, Inc. are organized under the laws of Delaware and have their principal place of business in New York. (Id. ¶¶ 12-14, 17).  Interscope Records is organized under the laws of California and has its principal place of business in California.  (Compl. ¶ 15).  Motown Record Company, L.P. is organized under the laws of California and has its principal place of business in New York.  (Id. ¶¶ 16, 19; Orseck Decl. ¶

---

[1]     The Complaint was initially commenced by nine record company plaintiffs, but on March 20, 2009 three of them stipulated to a dismissal of their claims.

2(d)).[2]  UMG Recordings, Inc. and Warner Bros. Records, Inc. are

organized under the laws of Delaware and have their principal

place of business in California.  (Compl. ¶¶ 18, 20).

      Playlist is a Delaware corporation with its principal

place of business in Palo Alto, California, in the Northern

District of California.  (Riney Decl. ¶ 3).  Playlist owns and

operates the Website.  (Compl. ¶ 2).  The Website, through a

computer program called a "spider," searches the Internet to

compile an index of links to sound recordings on other websites.

(Id. ¶¶ 3, 29-30).  The Website works as follows:  A user

searches for a particular song or artist, clicks "Search," and

then an index appears.[3]  The user then has a number of options.

_____

    [2]  The Complaint incorrectly identified the principal
place of business for Motown as California.  In fact, Motown has
its principal place of business in New York.  (Orseck Decl. ¶
2(d)).

    [3]  Some of the facts are drawn from the Court's own review
of the Website.  Because the Website is incorporated by reference
into the Complaint, the Court may consider it on a motion to
dismiss.  See Gorran v. Atkins Nutritionals, Inc., 464 F. Supp.
2d 315, 319 n.1 (S.D.N.Y. 2006) (considering website where
website is incorporated by reference into complaint); Knievel v.
ESPN, Inc., 223 F. Supp. 2d 1176, 1176 (D. Mont. 2002)
(considering website where "the contents of the [] website are at
the center of Plaintiffs' allegations").

    The Complaint alleges that Playlist "copies to its own
servers thousands (if not millions) of the music files identified
on its search index, so that it can perform those works to its
users more easily."  (Compl. ¶ 37).  This allegation refers to
Playlist's cache.  (Def. Dismiss Mem. at 5 n.2).  A computer
cache is a storage area on a computer where frequently accessed
data is stored to give the user faster access to it.  See LG
Elecs., Inc. v. Asustek Computer, Nos. 01 Civ. 00326, 01375,
01594, 02187, and 01552 (CW), 2002 U.S. Dist. LEXIS 28398, at *34
(N.D. Cal. Aug. 20, 2002) (citing McGraw-Hill Electronics
Dictionary 68 (5th ed. 1994)).

First, she can listen to the song, through the Website's proprietary music player,[4] by clicking the "Play" button located next to the song's title.  (Id. ¶ 33).  Second, she can add the song to a playlist that she can save on the Website, share with other users of the Website, or upload to her profile on a number of social networking sites such as Facebook and MySpace.  (Id. ¶ 36).  Finally, she can download the song, but only by clicking on a link that reads, "Visit site."  The Website then opens a new window with the third-party website.  At the top of the page is the following message, provided by Playlist:

> Below is the website [address] containing the music file.  Some music files located in this site may be subject to copyright.  To be safe, don't download from this site.  If you like it, click here to download from itunes [link] or you can download the ringtone [link]!

Notwithstanding Playlist's warning to users to exercise caution with respect to illegally downloading copyrighted works, users are not prevented from downloading songs from these third-party websites.  (Id. ¶ 34).

In addition to providing an index of songs found through its "spider," Playlist also builds its database of links by permitting users to submit links to songs they found on the Internet.  (Id. ¶ 31).

---

[4]      While the song plays through Playlist's Website, it is not clear to the Court, either from the Complaint or the Court's own review of the Website, whether the song file is copied over to the Playlist music player, or whether it is always located on the third-party websites.

-4-

The "overwhelming majority" of the songs in Playlist's index are posted without permission of the copyright owners. (<u>Id.</u> ¶ 4).  Plaintiffs own the copyright to many of these songs. (<u>Id.</u> ¶¶ 25-26 & Exs. A & B).

## B.  Procedural History

Plaintiffs filed the complaint in this action on April 28, 2008, asserting claims against Playlist for direct and secondary copyright infringement under 17 U.S.C. §§ 106 and 501, common law copyright infringement under New York law as to plaintiffs' pre-1972 recordings, and unfair competition under New York law as to plaintiffs' pre-1972 recordings.[5]  Plaintiffs invoked the Court's jurisdiction under 28 U.S.C. §§ 1331 and 1338 for the federal claims, and under 28 U.S.C. §§ 1367(a) and 1338(b) for the state claims.

These motions followed.

### DISCUSSION

Playlist moves to transfer venue and to dismiss plaintiffs' two state law causes of action.  For the reasons set forth below, both motions are denied.

## A.  The Motion to Transfer Venue

Playlist seeks to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a), arguing

---

[5]    The Copyright Act does not govern sound recordings created before February 15, 1972, <u>see</u> 17 U.S.C. § 301(c), and thus plaintiffs allege state law claims as to the pre-1972 recordings to which they hold copyrights.

that venue would be more convenient for the parties, and that
defendants only filed suit in this district to avoid the reach of
an adverse Ninth Circuit precedent.  Plaintiffs oppose the
motion, arguing that, because three of the six plaintiffs are
located in this District and none in the Northern District of
California, venue in this District is appropriate.

## 1.  Standard Under 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), a court may transfer any
civil action to any other district where the case might have been
brought if the transfer serves "the convenience of parties and
witnesses, [and is] in the interest of justice."  28 U.S.C. §
1404(a); see Van Dusen v. Barrack, 376 U.S. 612, 616 (1964).
"The threshold question in deciding transfer of venue . . . is
whether the action could have been brought in the transferee
forum."  Millennium, L.P. v. Hyland Software, Inc., 03 Civ. 3900
(DC), 2003 WL 22928644, at *2 (S.D.N.Y. Dec. 10, 2003).  If this
is established, the district court generally should disturb the
plaintiff's choice of forum only if, on balance, the following
factors clearly favor transfer:  (1) the convenience of
witnesses; (2) the convenience of the parties; (3) the locus of
operative facts; (4) the location of relevant documents and
relative ease of access to sources of proof; (5) the availability
of process to compel the attendance of unwilling witnesses; (6)
the forum's familiarity with the governing law; (7) the relative
financial means of the parties; (8) the weight afforded
plaintiff's choice of forum; and (9) trial efficiency and the

-6-

interests of justice generally. <u>See</u> <u>Anadigics, Inc. v. Raytheon</u>
<u>Co.</u>, 903 F. Supp. 615, 617 (S.D.N.Y. 1995).

While a district court has "broad discretion" under
1404, because that discretion "must be exercised at the very
outset of the case, when relatively little is known about how the
case will develop, courts have typically accorded substantial
weight to the [eighth] factor, plaintiff's choice of forum."
<u>Albert Fadem Trust v. Duke Energy Corp.</u>, 214 F. Supp. 2d 341, 343
(S.D.N.Y. 2002). The burden rests on the moving party to make a
"clear and convincing" showing that transfer under Section
1404(a) is proper. <u>Millennium L.P. v. Dakota Imaging, Inc.</u>, No.
03 Civ. 1838 (RWS), 2003 WL 22940488, at *6 (S.D.N.Y. Dec. 15,
2003) (citation omitted).

## 2. **Application**

Playlist has not made a "clear and convincing" showing
that transfer is warranted. I address each of the nine factors
in turn.[6]

### (a) **Convenience of Witnesses**

This factor, generally considered the most important in
the 1404 analysis, does not favor transfer. <u>See</u> <u>Aerotel, Ltd. v.</u>
<u>Sprint Corp.</u>, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000) ("The
convenience of both party and nonparty witnesses is probably

---

[6] Plaintiffs do not dispute that this action could have
been brought in the Northern District of California; thus, the
threshold requirement for transfer has been met.

considered the single most important factor in the analysis of whether a transfer should be granted.").

Playlist has identified eight people whom it claims are key witnesses, but only four of them live in the Northern District of California; the other four live in the Central District of California, an hour and twenty minute flight away.[7] Hence, moving this case to the Northern District of California will only make this case more convenient for half of Playlist's key witnesses -- the rest will still have to get on a plane, albeit to travel a shorter distance.[8]

---

[7] Playlist wrote to the Court on March 24, 2009 to argue that the March 20, 2009 dismissal of claims by three of the plaintiffs changed the 1404(a) transfer analysis. As discussed below, I disagree. In that same letter, Playlist alerted the Court to a recent decision of this Court in which Judge Baer granted a venue transfer motion under circumstances that Playlist describes as "remarkably similar to those at hand." See Capitol Records, LLC v. VideoEgg, Inc., No. 08 Civ. 5831 (HB), 2009 WL 614727 (S.D.N.Y. Mar. 9, 2009). I disagree that Capitol Records is "remarkably similar." There, the defendant's key witnesses all lived and worked in the same district to which the defendant wanted to transfer the case. See id. at *11. That is not the case here, and thus Capitol Records is distinguishable.

[8] For the purposes of this analysis, it is not significant that the flight from the Central District of California to the Northern District of California is shorter than the flight from the Central District of California to this District. See Eslworldwide.com, Inc. v. Interland, Inc., No. 06 Civ. 2503 (LBS), 2006 U.S. Dist. LEXIS 41935, at *12 n.2 (S.D.N.Y. June 21, 2006) (holding that burden of traveling several more hours where party must travel anyway not legally significant); Coker v. Bank of Am., 984 F. Supp. 757, 765 (S.D.N.Y. 1997) (R&R) (same); Can. Kennel Club v. Cont'l Kennel Club, No. 96 Civ. 6735 (LMM), 1997 U.S. Dist. LEXIS 9159, at *7 n.3 (S.D.N.Y. June 23, 1997) (same); Kazenercom Too v. Turan Petroleum, Inc., No. 08 Civ. 1339 (ESH), 2008 U.S. Dist. LEXIS 102706, at *27 (D.D.C. Dec. 19, 2008) (same).

Plaintiffs, for their part, have identified a number of witnesses in this District whose testimony they expect to be key. While Playlist contends that plaintiffs' witnesses are irrelevant, I do not accept that contention at this early stage of the case, as plaintiffs will undoubtedly want to call witnesses to attest to, inter alia, their ownership of the copyrights, the alleged infringement, and the adverse impact that infringement has had on plaintiffs' business. Accordingly, this factor is neutral in the analysis.

### (b)  Convenience of Parties

Playlist argues that its "operations will be placed in serious jeopardy if Playlist is required to send its key personnel across the country for a trial." (Def. Transfer Mem. at 13).  More specifically, Playlist argues that the operation of the Website requires constant or near constant attention, and that its continued survival would be placed in jeopardy if key employees lacked Internet access for five to six hour blocks of time (the time of a flight from San Francisco to New York).  I do not accept this argument, as Playlist surely must be able to make arrangements for coverage when its key personnel must travel. After all, Playlist has established what appears to be an international business.

Plaintiffs argue that trial in the Northern District of California would be inconvenient for them, as none has its principal place of business in that District.  They argue that transfer would merely "shift the inconvenience of litigating in a

-9-

particular forum from one party to the other." <u>DealTime.com Ltd.</u>
<u>v. McNulty</u>, 123 F. Supp. 2d 750, 756 (S.D.N.Y. 2000).

As Playlist points out, however, all six plaintiffs
have commenced actions in the Northern District of California as
recently as 2008.  (Plaut Decl. ¶¶ 2-3 & Ex. A (docket sheets of
cases commenced by plaintiffs)).  This evidence belies
plaintiffs' claim that litigation in the Northern District would
be inconvenient.  <u>See</u> <u>Indian Harbor Ins. Co. v. Factory Mut. Ins.</u>
<u>Co.</u>, 419 F. Supp. 2d 395, 402 n.3 (S.D.N.Y. 2005) ("The Court
does not consider defendant's claimed inconvenience as the
inconvenience of defending a suit in the Southern District of New
York 'cannot be overwhelming' when defendant previously appeared
in actions in that district."); <u>Bristol-Myers Squibb Co. v. Andrx</u>
<u>Pharms., LLC</u>, No. 03 Civ. 2503, 2003 U.S. Dist. LEXIS 21967, at
**11-12 (S.D.N.Y. Dec. 4, 2003) ("The inconvenience to
[defendants] caused by a suit in New York, though defendants
claim it would be great, cannot be overwhelming when [defendants]
ha[ve] previously appeared in actions here.").

In the end, this factor is neutral.

### (c)  **Locus of Operative Facts**

Due to the nature of the claims plaintiffs assert,
there are several loci of operative facts.  <u>See</u> <u>Adams v. Key</u>
<u>Tronic Corp.</u>, No. 94 Civ. 0535 (MBM), 1996 U.S. Dist. LEXIS
19244, at *12 n.1 (S.D.N.Y. Dec. 31, 1996) (noting that "venue
analysis may determine that there are several loci of operative
facts"); <u>Kwatra v. MCI, Inc.</u>, No. 96 Civ. 2491 (DC), 1996 U.S.

-10-

Dist. LEXIS 17883, at **9-10 (S.D.N.Y. Dec. 3, 1996) (same).  In
an infringement action, one locus of operative facts is the place
where the allegedly-infringing product was designed and
developed.  See Bristol-Myers Squibb Co., 2003 U.S. Dist. LEXIS
21967, at *10.  Thus, the Northern District of California is one
locus of operative facts.

        But New York is too.  Plaintiffs claim that Playlist
makes copyrighted works available to users "by compiling an ever-
expanding index of links to music files hosted on websites on the
Internet," and that many of those websites are hosted on computer
servers in New York.  (Compl. ¶¶ 29-30).  Plaintiffs also claim
that Playlist receives funding from a New York investment company
and generates revenue by selling advertising to New York
companies through a New York ad agency.  (Id. ¶ 9; Orseck Decl. ¶
8).  These facts are sufficient to make New York a locus of
operative events.

        Because both districts are loci of operative facts,
this factor is neutral in the analysis.

                    (d)  **Location of Relevant Documents**

        This factor is neutral.  Most, if not all, of the
relevant documents in this case will be electronic, and Playlist
will simply put them on disks and send them to plaintiffs.  Cf.
Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am.,
Inc., No. 06 Civ. 3123 (CSH), 2007 U.S. Dist. LEXIS 3652, at *25
(S.D.N.Y. 2007) ("The location of relevant documents is largely a

                              -11-

neutral factor in today's world of faxing, scanning, and emailing documents.").

### (e) **Availability of Process**

Playlist identifies several prospective witnesses who would "[p]resumably . . . be more willing to testify in their home state than New York." (Def. Transfer Mem. at 17). Playlist does not argue, however, that these witnesses would be unwilling to testify at trial in this District, and therefore this factor is neutral in the Court's analysis. Cf. In re Global Cash Access Holdings, Inc. Sec. Litig., No. 08 Civ. 3516 (SWK), 2008 U.S. Dist. LEXIS 70367, at *22 (S.D.N.Y. Sept. 18, 2008) ("As there are no allegations that any particular witnesses are unwilling to testify should this matter proceed to trial, this factor is neutral in the Court's analysis.") (emphasis added).

### (f) **Forum's Familiarity With Governing Law**

In copyright cases, this factor is given little to no weight, see AEC One Stop Group, Inc. v. CD Listening Bar, Inc., 326 F. Supp. 2d 525, 531 (S.D.N.Y. 2004), and defendant's argument that the Court should give it substantial weight in light of the Northern District of California's purported expertise in several of the statutes at issue in this case is unavailing. I therefore give no weight to this factor.

### (g) **Relative Financial Means of Parties**

Playlist places much weight on this factor, arguing that it is a plucky start-up with only twenty-five employees,

-12-

while plaintiffs are some of the largest record companies in the
world, with unlimited resources.  This factor carries little
weight, however, when the party arguing to transfer is a
corporation.  Cf. id. ("When both parties are corporations,
however, this factor is given little weight.").  This is
particularly so here, given the contacts that Playlist has with
New York.

### (h)  **Weight Accorded to Plaintiffs' Choice of Forum**

The Second Circuit has consistently held that "a
plaintiff's choice of forum is presumptively entitled to
substantial deference."  Gross v. BBC, 386 F.3d 224, 230 (2d Cir.
2004); accord Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 101
(2d Cir. 2000) (holding that "a plaintiff's choice of forum is
entitled to substantial deference and should only be disturbed if
the factors favoring the alternative forum are compelling").
That presumption is even stronger where the chosen forum is also
the plaintiff's home.  See Pollux Holding, Ltd. v. Chase
Manhattan Bank, 329 F.3d 64, 71 (2d Cir. 2003); Guidi v.
Inter-Continental Hotels Corp., 224 F.3d 142, 146 (2d Cir. 2000).

Defendant argues this Court should afford little weight
to plaintiffs' choice of forum, however, because plaintiffs only
chose to file suit in this District to escape the reach of a
purportedly adverse Ninth Circuit precedent that would preclude
their state law claims were this case to proceed in California.
Even assuming there is some truth to this argument, Playlist is
undoubtedly moving to transfer to California in part to take

-13-

advantage of that same Ninth Circuit precedent.  Clearly,
plaintiffs chose to file suit in this District at least in part
because three out of six of them maintain their principal place
of business here, and because defendant conducts business here.
Accordingly, this factor weighs against transfer.

### (i) Trial Efficiency and Interests of Justice

This factor relates to judicial economy, and it is
undeniable that the Southern District of New York is one of the
busiest district courts in the country.  Defendant has adduced
evidence tending to show that, on average, the Northern District
of California resolves cases faster than courts in this District.
That may be so, but the time differential no doubt is due in part
to the complex nature of many of the cases in this Court.  I do
not believe this case would be resolved appreciably faster in
California.  This factor therefore does not favor transfer.

### (j) Conclusion

Considering all the factors, Playlist simply has not
made the "clear and convincing" showing required to warrant
transfer of this case to the Northern District of California.
Hence, its motion to transfer is denied.

### B. The Motion to Dismiss the State Law Claims

Playlist moves to dismiss plaintiffs' New York state
law claims for common law copyright infringement and unfair
competition on the ground that such claims are barred by a
provision of the Communications Decency Act, 47 U.S.C. § 230 (the

-14-

"CDA"). I conclude, based on the plain language of the statute,
that the CDA does not bar plaintiffs' state law claims.
Defendant's motion to dismiss these claims is therefore denied.

## 1.   Standard on a Motion to Dismiss

When considering a motion to dismiss pursuant to Rule
12(b)(6), the Court must accept plaintiff's factual allegations
as true and draw all reasonable inferences in its favor. See
Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). The Court may
only consider the allegations in the complaint and any documents
either attached as exhibits to the complaint or incorporated into
the complaint by reference. Blue Tree Hotels Inv. (Can.), Ltd.
v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217
(2d Cir. 2004).

To survive a motion to dismiss, a plaintiff's claim
must be "plausible." See Bell Atlantic Corp. v. Twombly, 127 S.
Ct. 1955, 1969 (2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d
Cir. 2007). Under the plausibility standard, a district court's
inquiry focuses on whether the complaint pleads "'enough facts to
state a claim for relief that is plausible on its face.'" Patane
v. Clark, 508 F.3d 106, 111-12 (2d Cir. 2007) (quoting Bell
Atlantic Corp., 127 S. Ct. at 1974).

## 2.   The Communications Decency Act

Congress enacted the CDA as Title V of the
Telecommunications Act of 1996, Pub. L. No. 104-104, primarily to
protect minors from exposure to obscene and indecent material on
the Internet. See S. Rep. No. 104-23, at 187-193 (1996) (noting

-15-

that Congress "has been troubled by an increasing number of
published reports of inappropriate uses of telecommunications
technologies to transmit pornography, engage children in
inappropriate adult contact, terrorize computer network users
through 'electronic stalking' and seize personal information");
see also Batzel v. Smith, 333 F.3d 1018, 1026 (9th Cir. 2003)
(reviewing legislative history of the CDA).

At the same time, however, Congress was also concerned
with ensuring the continued development of the Internet.  See 47
U.S.C. § 230(b).  Section 230, the provision at issue in this
case, was enacted based on a congressional concern that treating
providers of computer services the same way as traditional
publishers would impede the development of the Internet.
Accordingly, Congress, "[w]hether wisely or not, [] made the
legislative judgment to effectively immunize providers of
interactive computer services from civil liability in tort with
respect to material disseminated by them but created by others."
Blumenthal v. Drudge, 992 F. Supp. 44, 49 (D.D.C. 1998); see also
Batzel, 333 F.3d at 1026 (noting that, in Section 230, Congress
made a policy decision to treat providers of third-party content
on the Internet differently than non-electronic providers of
third-party content, such as newspapers).

### 3.    Is Defendant Entitled to Immunity Under Section
### 230(c)(1) of the Communications Decency Act?

Playlist argues that it is entitled to immunity under
Section 230(c)(1) of the CDA, which provides, in relevant part,

-16-

as follows:  "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  Plaintiffs argue that Playlist is not covered by this grant of immunity because Playlist itself functions as an "information content provider."  Cf. Novak v. Overture Servs., 309 F. Supp. 2d 446, 452 (E.D.N.Y. 2004) ("Under Section 230(c), an 'interactive computer service' qualifies for immunity so long as it does not also function as an 'information content provider' for the portion of the statement or publication at issue.").  The CDA defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).  Playlist argues that it neither creates nor develops information, and therefore is not an "information content provider" under the CDA.  I agree.

Courts across the country[9] have repeatedly held that the CDA's grant of immunity should be construed broadly.  See Universal Commc'n Sys. v. Lycos, Inc., 478 F.3d 413, 419 (1st Cir. 2007) (reviewing cases and holding "we too find that Section 230 immunity should be broadly construed"); Carafano v. Metrosplash.com, Inc., 339 F.3d 1119, 1123 (9th Cir. 2003); Ben Ezra, Weinstein, & Co. v. Am. Online, Inc., 206 F.3d 980, 986

---

[9]     The Second Circuit has not yet interpreted 47 U.S.C. § 230(c)(1).

-17-

(10th Cir. 2000); Blumenthal v. Drudge, 992 F. Supp. 44, 49 (D.D.C. 1998). In Zeran v. America Online, Inc., the Fourth Circuit explained why a broad reading of the provision is necessary:

> Congress' purpose in providing the § 230 immunity was thus evident. Interactive computer services have millions of users. The amount of information communicated via interactive computer services is therefore staggering. The specter of tort liability in an area of such prolific speech would have an obvious chilling effect. It would be impossible for service providers to screen each of their millions of postings for possible problems. Faced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted. Congress considered the weight of the speech interests implicated and chose to immunize service providers to avoid any such restrictive effect.

129 F.3d 327, 331 (4th Cir. 1997) (citation omitted); see also Barrett v. Rosenthal, 40 Cal. 4th 33, 46, 146 P.3d 510, 518, 51 Cal. Rptr. 3d 55, 64 (2006) (noting that the "Zeran court's views have been broadly accepted, in both federal and state courts").

Consistent with this broad reading of the statute, courts have held that an interactive computer service is not liable where it posts or links to a third-party's content. The First Circuit's recent decision in Lycos is particularly instructive. There, a telecommunications company and its CEO sued, inter alia, Lycos for allegedly defamatory statements made on an Internet message board operated by Lycos. Lycos, 478 F.3d at 415-16. The district court dismissed the complaint under

-18-

Section 230, holding that Lycos could not be held liable for statements made by third parties on a Lycos message board.

While the First Circuit affirmed on other grounds, in addressing the Section 230 issue it squarely rejected plaintiffs' argument that Lycos was an "information content provider" under the CDA because Lycos played a role in creating the content.  Id. at 419-20.  Specifically, plaintiffs argued that Lycos was responsible for creating content as it was aware that some of the message board posts were defamatory and because, merely by operating its website, Lycos was assisting users in creating content.  "At best," the First Circuit held, "[these] allegations establish that Lycos's conduct may have made it marginally easier for others to develop and disseminate misinformation.  That is not enough to overcome Section 230 immunity."  Id. at 420.

Similarly, in Parker v. Google, Inc., 422 F. Supp. 2d 492, 501 (E.D. Pa. 2006), aff'd, 242 Fed. Appx. 833 (3d Cir. 2007), the district court held that Section 230 immunized Google from plaintiff's claim that Google could be liable for defamation, invasion of privacy, and negligence because it provided users with links to message board posts to which plaintiff objected.  The Court held that there was "no doubt that Google qualifies as an 'interactive computer service' and not an 'information content provider,'" because, inter alia, "[i]n each instance raised by Plaintiff's tort claims, Google either archived, cached, or simply provided access to content that was created by a third party."  Id.

-19-

Here, Playlist engaged in conduct similar to Lycos's
and Google's -- conduct that courts held was immune under Section
230(c)(1) of the CDA.  The content at issue here is the songs to
which plaintiffs hold copyrights, songs which Playlist lets users
play through its Website and to which Playlist provides links for
downloading.  But Playlist neither creates nor develops that
content (i.e., those songs to which plaintiffs hold copyrights).
It merely creates an interface for users of Playlist's Website to
listen to third-party content, and also provides links for users
to download that third-party content.  In this respect, Playlist
is no different than Google or Lycos.  This conclusion is
consistent with the prevailing view that "information content
provider" be construed narrowly.  See Carafano, 339 F.3d at 1123
("[R]eviewing courts have treated § 230(c) immunity as quite
robust, adopting a relatively expansive definition of
'interactive computer service' and a relatively restrictive
definition of 'information content provider.'").

The only case plaintiffs cite to the contrary is the
recent en banc decision of the Ninth Circuit in Fair Housing
Council v. Roommates.com, LLC, 521 F.3d 1157 (9th Cir. 2008).
That case, however, is readily distinguishable.  In
Roommates.com, two California Fair Housing Councils sued
Roommates.com, an online roommate-matching service, for violating
the Fair Housing Act, 42 U.S.C. § 3601 et seq., and California
anti-discrimination laws.  521 F.3d at 1162.  The Ninth Circuit

-20-

rejected Roommates.com's argument that it was entitled to
immunity under Section 230.

The Ninth Circuit's decision was based solely on the
fact that the content on the website that was discriminatory was
supplied by Roommates.com itself.  It was Roommates.com that, in
violation of federal and California state housing law, required
potential subscribers to identify their sex, sexual orientation,
and family status, and to indicate their preferred sex, sexual
orientation, and family status in a roommate.  Id. at 1161-62.
The Ninth Circuit explained as follows:

> Here, the part of the profile that is alleged
> to offend the Fair Housing Act and state
> housing discrimination laws -- the
> information about sex, family status and
> sexual orientation -- is provided by
> subscribers in response to Roommate's
> questions, which they cannot refuse to answer
> if they want to use defendant's services.  By
> requiring subscribers to provide the
> information as a condition of accessing its
> service, and by providing a limited set of
> pre-populated answers, Roommate becomes much
> more than a passive transmitter of
> information provided by others; it becomes
> the developer, at least in part, of that
> information.  And section 230 provides
> immunity only if the interactive computer
> service does not "creat[e] or develop[ ]" the
> information "in whole or in part."

Id. at 1166 (quoting 47 U.S.C. § 230(f)(3)).  Thus, key to the
Ninth Circuit's decision was the fact that Roommates.com was
actively participating in creating the objectionable content, by
providing the questions and by requiring users to answer them.

In this case, unlike Roommates.com, Playlist does not
itself supply the content to which plaintiffs object -- the

-21-

songs. Playlist merely provides the interface for accessing that content -- by permitting users to listen to the songs on Playlist's Website -- and provides links so users can download the songs on third-party websites. It is, in these respects, no different than Lycos, which provides chat rooms in which third-parties can voice their opinions, and Google, which provides users with lists of links responsive to user searches. At best, Playlist is guilty of "passive acquiescence in the misconduct of its users," and, even under Roommates.com, Playlist is entitled to immunity under Section 230(c)(1). See id. at 1169 n.24 ("Insofar, however, as a plaintiff would bring a claim under state or federal law based on a website operator's passive acquiescence in the misconduct of its users, the website operator would likely be entitled to CDA immunity. This is true even if the users committed their misconduct using electronic tools of general applicability provided by the website operator.").

        Accordingly, I conclude, as a matter of law, that Playlist is entitled to immunity under Section 230(c)(1) of the CDA. That immunity is not absolute, however, and I now turn to address whether that immunity can defeat plaintiffs' state law claims.

## 4. **Do Plaintiffs' State Law Claims Fall Within the Carve-Out of Section 230(e)(2)?**

        Even if Playlist is entitled to immunity under Section 230(c)(1), plaintiffs argue their state law claims can still proceed because they fall within the immunity carve-out of

-22-

Section 230(e)(2). Defendant argues this carve-out only saves

plaintiffs' federal claims.

Section 230(e), entitled "Effect on other laws,"

provides as follows:

>        (1) No effect on criminal law. Nothing in
>    this section shall be construed to impair the
>    enforcement of section 223 or 231 of this
>    Act, chapter 71 (relating to obscenity) or
>    110 (relating to sexual exploitation of
>    children) of title 18, United States Code, or
>    any other Federal criminal statute.
>
>        (2) No effect on intellectual property law.
>    Nothing in this section shall be construed to
>    limit or expand any law pertaining to
>    intellectual property.
>
>        (3) State law. Nothing in this section
>    shall be construed to prevent any State from
>    enforcing any State law that is consistent
>    with this section. No cause of action may be
>    brought and no liability may be imposed under
>    any State or local law that is inconsistent
>    with this section.
>
>        (4) No effect on communications privacy law.
>    Nothing in this section shall be construed to
>    limit the application of the Electronic
>    Communications Privacy Act of 1986 or any of
>    the amendments made by such Act, or any
>    similar State law.

Plaintiffs argue that, under the plain language of Section

230(e)(2), the CDA does not limit any law pertaining to

intellectual property, and therefore their state law claims can

proceed. Playlist argues that this provision really means that

nothing in the CDA should be construed to limit any federal

intellectual property law.

Playlist advances two textual arguments to support its

reading, neither of which has merit. First, Playlist argues that

-23-

because Section 230(e)(3) -- entitled "State law" -- addresses
state law, the remaining sections must only address federal law.
I disagree.  The fact that Section 230(e)(3) addresses state law
does not mean that a reference in another subsection to "any law"
is meant to only encompass federal law.  Indeed, Section
230(e)(1) refers specifically to federal criminal law, see
230(e)(1) (referring to "any other Federal criminal statute"),
and the specific reference would be unnecessary if Playlist were
correct that subsections (1), (2), and (4) covered only federal
law.  Playlist's contention is also contradicted by subsection
(4), which refers to, inter alia, "any similar State law."

Second, Playlist argues that Section 230(e)(3) preempts
all state laws relating to intellectual property, because those
laws are inconsistent with the CDA.  Again, I disagree.  Playlist
misreads Section 230(e)(3).  That subsection also provides that
states can enforce any state law consistent with the CDA.
Section 230(e)(3) does not attempt to define what state law is
consistent and inconsistent with the CDA; in other words,
230(e)(3) provides no substantive content.  Playlist has not
demonstrated that plaintiffs' state law claims are inconsistent
with the CDA.

Playlist's primary argument is rooted not in the text
of the statute but in the public policy underlying it.  Playlist
correctly points out that Congress, in enacting the CDA, stated
that the policy of the United States would be "to promote the
continued development of the Internet and other interactive

-24-

computer services and other interactive media" and "to preserve
the vibrant and competitive free market that presently exists for
the Internet and other interactive computer services, unfettered
by Federal or State regulation."   47 U.S.C. § 230(b)(1)-(2).
Based on these statements of policy, Playlist argues that
Congress evidenced an intent not to subject Internet providers to
potentially inconsistent state laws.   Accordingly, argues
Playlist, the CDA should be read to immunize Internet providers
from all state law claims, even those sounding in intellectual
property.

        In support of its position, Playlist relies heavily on
a 2007 Ninth Circuit case in which the Ninth Circuit held that
the term "intellectual property" in the CDA really means "federal
intellectual property."   See Perfect 10, Inc. v. CCBill LLC, 488
F.3d 1102, 1119 (9th Cir. 2007) ("In the absence of a definition
from Congress, we construe the term 'intellectual property' to
mean 'federal intellectual property.'").[10]   The Ninth Circuit
reasoned that federal intellectual property law is relatively

_____

        [10]   This aspect of the Perfect 10 Court's holding appears
to be inconsistent with other Ninth Circuit precedent.   See,
e.g., SEC v. Gemstar-TV Guide Int'l, Inc., 367 F.3d 1087, 1095
(9th Cir. 2004) ("Absent a definition from Congress, we interpret
the words using their ordinary, contemporary, and common
meanings."), rev'd en banc on other grounds, 401 F.3d 1031 (9th
Cir. 2005); Bonnichsen v. United States, 367 F.3d 864, 875 (9th
Cir. 2004) ("It is axiomatic that, in construing a statute,
courts generally give words not defined in a statute their
ordinary or natural meaning.") (internal citation and quotations
omitted); United States v. Mohrbacher, 182 F.3d 1041, 1048 (9th
Cir. 1999) ("Where a statutory term is not defined in the
statute, it is appropriate to accord the term its ordinary
meaning.") (internal citation and quotations omitted).

uniform, while state laws can vary significantly, subjecting
providers to state laws that could threaten the development of
the Internet. See id. ("Because material on a website may be
viewed across the Internet, and thus in more than one state at a
time, permitting the reach of any particular state's definition
of intellectual property to dictate the contours of this federal
immunity would be contrary to Congress's expressed goal of
insulating the development of the Internet from the various
state-law regimes.").

        The problem with Playlist's argument is that it lacks
any support in the plain language of the CDA.[11]  In four
different points in Section 230(e), Congress specified whether it
intended a subsection to apply to local, state, or federal law.
See 47 U.S.C. §§ 230(e)(1) ("any other Federal criminal
statute"), (3) ("any State law" and "any State or local law"),
(4) ("any similar State law") (emphasis added in all).  It is
therefore clear from the statute that if Congress wanted the
phrase "any law pertaining to intellectual property" to actually
mean "any federal law pertaining to intellectual property," it
knew how to make that clear, but chose not to.  Cf. Barnhart v.
Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[I]t is a general
principle of statutory construction that when Congress includes
particular language in one section of a statute but omits it in
another section of the same Act, it is generally presumed that

_____

        [11]   The Ninth Circuit did not engage in a textual analysis
in Perfect 10.

-26-

Congress acts intentionally and purposely in the disparate inclusion or exclusion."); United States v. Gonzales, 520 U.S. 1, 5 (1997) (holding that "any other term of imprisonment" includes both state and federal terms of imprisonment because "Congress did not add any language limiting the breadth of that word, and so we must read [the statute] as referring to all 'terms of imprisonment'").

Moreover, the modifier "any" in Section 230(e)(2), employed without any limiting language, "amounts to 'expansive language [that] offers no indication whatever that Congress intended [a] limiting construction.'" Doe v. Friendfinder Network, Inc., 540 F. Supp. 2d 288, 299 (D.N.H. 2008) (quoting Harrison v. PPG Indus., 446 U.S. 578, 589 (1980)). This conclusion is bolstered by the fact that, as discussed above, the "surrounding statutory language" supports the conclusion that Congress intended the word "any" to mean any state or federal law pertaining to intellectual property. See ACLU v. Dep't of Def., 543 F.3d 59, 69 (2d Cir. 2008) (holding that word "any" in statute "deserves an expansive application where the surrounding statutory language and other relevant legislative context support it").

Because the plain language of the CDA is clear, as "any law" means both state and federal law, the Court need not engage in an analysis of the CDA's legislative history or purpose. See Lee v. Bankers Trust Co., 166 F.3d 540, 544 (2d Cir. 1999) ("It is axiomatic that the plain meaning of a statute controls its

interpretation and that judicial review must end at the statute's unambiguous terms. Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous.") (internal citations omitted).

Accordingly, I conclude, as a matter of law, that Section 230(c)(1) does not provide immunity for either federal or state intellectual property claims. See Friendfinder Network, Inc., 540 F. Supp. 2d 288 at 302 (rejecting the Ninth Circuit's decision in Perfect 10 and holding that "[c]onsistent with its text, § 230(e)(2) applies simply to 'any law pertaining to intellectual property,' not just federal law."); Murawski v. Pataki, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) (reading 230(c)(1) to "immunize[] internet service providers from defamation and other, non-intellectual property, state law claims arising from third-party content"); Gucci Am., Inc. v. Hall & Assocs., 135 F. Supp. 2d 409, 415 (S.D.N.Y. 2001) ("The instant claims are grounded in the law of intellectual property and, therefore, do not, on a motion to dismiss, implicate Section 230 immunity."); Lycos, Inc., 478 F.3d at 422-23 (stating, in dicta, that "[c]laims based on intellectual property laws are not subject to Section 230 immunity.").

Because Section 230(e) does not immunize Playlist from plaintiffs' state law claims, its motion to dismiss is denied.[12]

---

[12] Because I have determined, based on the plain language of the CDA, that plaintiffs' state law claims can proceed, I do not address plaintiffs' argument that Playlist's reading of the CDA would implicitly repeal Section 301(c) of the Copyright Act.

## CONCLUSION

For the foregoing reasons, Playlist's motions for a change of venue and to dismiss plaintiffs' state law claims are denied.  The parties are ordered to appear in Courtroom 11A on April 10, 2009 at 10:00 a.m. for a conference to set a discovery schedule.

SO ORDERED.

Dated:    New York, New York
          March 25, 2009

DENNY CHIN
United States District Judge

-29-